IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-182

Filed 5 August 2026

Pasquotank County, No. 21CVS000496-690

RICHARD SAUNDERS, Plaintiff,

v.

PHILLIP E. WOOLARD d/b/a WOOLARD'S WELDING SERVICE, Defendant.

Appeal by respondents-appellants from orders entered 22 May 2024 and 9 August 2024 by Judge Andrew Womble in Pasquotank County Superior Court. Heard in the Court of Appeals 10 September 2025.

> *Lewis & Roberts, PLLC, by Matthew D. Quinn, Neil K. Sanyal, and Roy G. Pettigrew, for respondents-appellants Orano USA, LLC and Liberty Mutual Insurance Group.*
>
> *Hardison & Cochran, PLLC, by Benjamin T. Cochran, for plaintiff-appellee.*

PER CURIAM.

On appeal, Orano USA LLC and Liberty Mutual Insurance Group argue the trial court improperly eliminated their subrogation lien on settlement proceeds Plaintiff Richard Saunders ("Employee") obtained from Defendant Phillip E. Woolard. Based on binding precedent from our Court, we must vacate the orders and remand for additional proceedings.

I.    Background

Employee suffered an injury while working on a job site for Orano, USA, LLC. Liberty Mutual Insurance Group is the workers compensation carrier for Orano. They are hereinafter referred to collectively as "Employer."

Defendant is a welding contractor, not affiliated with Employer, performing welding work on the same job site. In this action, Employee alleges his injuries were caused by the negligence of Defendant.

Prior to filing this action, Employee filed a workers' compensation claim Employer for the same injuries, which Employer accepted and has continued to pay, providing Employee with temporary total disability and medical compensation.

Employee subsequently filed this suit against Defendant alleging negligence. Defendant answered, denying liability. During discovery, evidence was uncovered tending to show Employer may have been negligent in causing Employee's injuries.

In any event, at some point of this litigation, Employee and Defendant agreed to settle Employee's claims for $450,000.00. Before finalizing the settlement, though, they sought the consent of Employer, as required by G.S. 97-10.2(h). Employer had paid well over $400,000.00 to Employee in workers' compensation benefits for the injuries Employee suffered.

Employer, however, refused to consent to the settlement. Therefore, Employee moved in this action pursuant to subsection (j) of G.S. 97-10.2 for the court to determine the amount of Employer's subrogation lien, if any.

After a hearing on the matter, the trial court entered an order, determining the amount of Employer's subrogation lien in the $450,000.00 settlement between Employee and Defendant to be zero ($0.00). Employer appeals.

## II.    Analysis

On appeal, Employer argues the trial court lacked subject-matter jurisdiction to enter its order and, therefore, the order should be set aside. Employer essentially contends that, under subsection (j) of G.S. 97-10.2, a trial court does not have jurisdiction to determine an employer's subrogation lien rights in a settlement between its employee and a third-party tortfeasor *unless and until* the settlement is final. And to be "final," the settlement agreement between the employee and the third-party tortfeasor must not be subject to a trial court's determination of the employer's subrogation lien rights in that settlement under subjection (j). Since, here, the agreement between Employee and Defendant was contingent on the trial court's determination regarding the Employer's subrogation lien, Employer argues that settlement was not "final" and, therefore, the trial court lacked jurisdiction in this case to enter any order determining Employer's subrogation lien rights.

The resolution of this appeal hinges largely on the interplay between subsections (h) and (j) of G.S. 97-10.2. Subsection (h) provides a lien to "every party to the claim for compensation" (i.e., employers and insurance carriers) on certain funds (those obtained by judgment, settlement, etc.) "against any person receiving such funds" (most likely the employee). N.C.G.S. § 97-10.2(h). Subsection (h) goes on

to state that "[n]either the employee . . . nor the employer shall make any settlement with or accept any payment from the third party without the written consent of the other and no release to or agreement with the third party shall be valid or enforceable for any purpose unless both employer and employee . . . join" and is subject to two exceptions, one of which being that a "party follows . . . subsection (j)[.]" *Id.* Relatedly, if an employee and a third-party tortfeasor reach a settlement agreement, subsection (j) permits a trial court to determine the amount of an employer's subrogation lien, irrespective of the employer's consent to the settlement agreement. *Id.* § 97-10.2(j).

As explained below, because of a decision by a panel of our Court in 2004—*Ales v. T.A. Loving Co.*, 163 N.C. App. 350 (2004)—we must conclude the trial court lacked jurisdiction under subsection (j) to determine Employer's subrogation rights. Based on the reasoning of that case, we must conclude Employee and Defendant had not reached a "settlement" under subsection (h), which is required to trigger the trial court's jurisdiction to act under subsection (j).

Our Workers Compensation Act was enacted as a compromise-type legislation. The Act was enacted to provide a quick remedy to employees against their employers for injuries occurring on the job without having to prove fault and, at the same time, "reduce[ ] unpredictability of loss and put[ ] it on an actuarial basis[.]" *Barber v. Minges*, 223 N.C. 213, 216 (1943).

The Act has been amended over time to deal with situations where an employee is injured on the job by a third-party tortfeasor. Our Supreme Court has provided a

good history of the changes made through the years to the Act regarding this issue in *Easter-Rozzelle v. City of Charlotte*, 370 N.C. 286 (2017). Indeed, our General Assembly has been grappling with balancing an employee's desire to seek relief beyond the Act from a third-party tortfeasor for his injuries and an employer's desire to recover from the tortfeasor for the employee's injuries for which the employer has provided benefits. *See generally id.*

Consider, for example, a scenario where an employee suffers an injury at work which is caused, in part, by the actions of a third-party tortfeasor. It may be that, in tort, the employee could recover $1 million in damages. However, under the Act, he might only be able to recover $600,000 from his employer. In such case, he may desire to sue the third-party tortfeasor, where he might be able to obtain a $1 million verdict if he proceeds to trial on a common law tort claim. The employer, however, may desire to recover from any judgment or settlement monies it has paid. So, in such case, it is difficult for an employee to agree to any settlement with a third-party tortfeasor where the employee does not know how much of the settlement will be subject to a subrogation lien of his employer who has paid benefits.

As our Supreme Court notes, the Act as originally enacted in 1929 "required an employee to choose between recovering compensation from [the] employer under the Act or recovering damages against the third-party tortfeasor." *Id.* at 294 (citation omitted). So, under the original statute, in the above hypothetical, the injured employee would have to choose between seeking the $600,000 from his employer

under the Act (without the need to prove fault) or rolling the dice and suing the tortfeasor in the hope of recovering $1 million. This "election of remedies" language, though, was removed in 1933, to allow an employer who had paid benefits under the Act the exclusive right for six months to sue the tortfeasor, after which the employee would have the right to sue the tortfeasor. *Id.* at 294–95.

In 1959, our General Assembly enacted G.S. 97-10.2, which is the key statute in the present case. *Id.* at 297.

In 1989, our Supreme Court construed the interplay between subsections (h) and (j) as it existed at that time, holding that the trial court lacked authority under (j) to determine an employer's subrogation rights in a "settlement" between the employee and a third-party tortfeasor, reasoning that no "settlement" had been reached under subsection (h) because the employer did not consent to the settlement. *Williams v. International Paper Co.*, 324 N.C. 567, 572 (1989). In so holding, the Court noted that the language in subsection (h) at that time provided that no settlement with a third-party tortfeasor would be valid or enforceable "unless both employer and employee [ ] join therein." *Id.* (citation omitted). Therefore, the Court reasoned, subsection (j)—which authorizes a trial court to determine the subrogation rights of an employer in a settlement with a third-party tortfeasor—is not triggered unless the employer consents to the settlement, as there can be no valid "settlement" under subsection (h) without the consent of the employer. *Id.* (holding subsection (j) was to be read in *pari materia* with subsection (h)).

In 1991, two years after *Williams*, our General Assembly amended subsections (h) and (j), effectively superseding our Supreme Court's 1989 holding in *Williams*. *Easter-Rozzelle*, 370 N.C. at 298–99. The new language provided that in some circumstances a settlement between an employee and a tortfeasor may be valid under subsection (h) even without the consent of the employer. *Id.* at 299. In such cases, a trial court would now be authorized under subsection (j) to determine an employer's subrogation rights in such settlement reached *without* the employer's consent. *Id.* at 299–300 ("[I]t is clear [under the 1991 amendments] consent is no longer required for a valid settlement and that either party can avail itself of subsection (j).").

We now turn to *Ales v. T.A. Loving Co.*, 163 N.C. App. 350 (2004), which we conclude controls the resolution of the case before us. In that case, an employee entered into an agreement with a third-party tortfeasor without the employer's consent to settle the case for $145,000, *subject to* a trial court's determination under subsection (j) that the employer would not be entitled to any of the proceeds. *Id.* at 351. At the trial court, the employer argued it was entitled to a lien for the full amount of the settlement, as it had paid over $200,000 in workers compensation benefits; however, the trial court determined the employer was not entitled to any lien on the settlement proceeds. *Id.*

On appeal, the employer argued that the trial court lacked jurisdiction to conduct a subsection (j) inquiry, as the "settlement" reached by the employee and the tortfeasor was not a true settlement under subsection (h) because of the contingency

- 7 -

in the agreement that it was subject to the outcome of the subsection (j) inquiry. *Id.* at 351–52. We held that a trial court does not have jurisdiction under subsection (j) "if the agreement between the [employee and the third-party tortfeasor] has been finalized so that only performance of the agreement is necessary to bind the parties." *Id.* at 353. The Court noted that a contract which contains a condition precedent– which, in that case, was the condition that the trial court must determine the employer would not be entitled to any lien—will not give rise to any contractual obligations between the parties until the condition is met. *Id.*

Our holding in *Ales* is not without criticism. Mere months after that decision, another panel of our Court decided *Wilkerson*, relying on *Ales* in holding the "settlement" reached in that case was not final and thus did not satisfy G.S. 97-10.2(j)'s jurisdictional prerequisite—namely, having a final settlement agreement. *Wilkerson v. Norfolk Southern Ry. Co.*, 167 N.C. App. 607, 609–10 (2004). There, we explained the agreement was not final because it was conditioned on the resolution of the employer's workers' compensation lien. *Id.* at 610. Specifically, we noted "that had the judge not extinguished the lien, there would be no settlement[,] and the parties would return to the negotiating table or trial" and therefore concluded the agreement contained a condition precedent. *Id.*

Our panel in *Wilkerson*, though concluding it was bound by *Ales*, criticized *Ales* in two important respects. First, the panel noted that *Ales* hinders the ability of the "common practice [of] employees and third[-]parties to come to tentative settlement

agreements in which the only contingency is that of satisfactory resolution of the workers' compensation lien." *Wilkerson*, 167 N.C. App. at 611. Indeed, it is less likely an employee will settle with a third-party tortfeasor if the employee cannot be certain he will get to keep the money. Consider the above example where the employee suffers potentially $1 million in damages but is only eligible to receive $600,000 from his employer under the Act. The employee may be willing to settle with the tortfeasor for $400,000 but will be understandably reluctant to do so where there is a risk the $400,000 will be taken by the employer, invoking its subrogation rights.

Second, the *Wilkerson* panel noted that "[i]nterpreting the *Ales* decision, along with subsection (h), seems to render litigants unable to get to (j) without a final settlement and unable to settle without the consent of all parties[,]" a scenario contrary to legislative intent. *Id.* at 612. This is so, because:

> Section 97-10.2(h) is the statutory authority for the lien[,] [a]nd[ ] it is clear that no release or settlement is binding unless the employee, the employer, and the third party all consent. So[,] by its very nature, subsection (h) prevents a settlement from occurring without the consent of everyone involved. The only way to settle a claim without the consent of all the parties is to proceed under subsection (j), which with the *Ales* decision is inapplicable absent a final settlement before invoking the provision.

*Id.* at 611–12 (emphasis omitted).

Our holding in *Ales* seems to cut against our public policy that encourages settlement of disputes. *See, e.g.*, *Bromhal v. Stott*, 341 N.C. 702, 705 (1995) ("We conclude that the public policy of this State encourages settlement agreements[.]");

- 9 -

*Penn Dixie Lines, Inc. v. Grannick*, 238 N.C. 552, 555 (1953) ("The law favors the settlement of controversies out of court." (citations omitted)); *Menard v. Johnson*, 105 N.C. App. 70, 73 (1992) ("[I]t is well settled that North Carolina public policy encourages prompt settlement of disputed claims." (citation omitted)). And it may be true that *Ales* interprets the term "settlement" in subsection (h) too narrowly, as a contract with a condition precedent is still a "valid contract." *See Farmers Bank v. Michael T. Brown Distribs., Inc.*, 307 N.C. 342, 350 (1983) (describing a condition precedent as "facts and events, occurring subsequently to the making of a valid contract" (citation omitted)).

Based on the record before us, we must conclude no "final" settlement (as defined by *Ales*) had been reached. Specifically, we note the *only* evidence offered on the issue of whether Employee and Defendant reached a settlement agreement were emails between the attorneys which indicated "the parties have come to a settlement at $450,000" but that the parties were "sit[ting] tight as it pertains to acquiring consent from [Employer's counsel]" and that Employee's counsel "need[ed] [Employer's] consent in writing to settle the claim[.]"

And despite Employee's current position on appeal, Employee's amended motion for the trial court to make a subsection (j) determination suggests that no "final" agreement without a condition precedent had been reached. Specifically, in paragraph 12 of that motion, Employee states that he and Defendant "would like to agree to a settlement of [Employee's claim] that would require approval by the [c]ourt

and setting of the lien as the settlement amount agreed to is less than the potential lien claimed by [Employer].”

We note at the hearing Employee's counsel *argued* there was an unconditional settlement agreement; however, arguments of counsel are not evidence. *See Blue v. Bhiro*, 381 N.C. 1, 6 (2022) (citation omitted).

Therefore, as pointed out in *Wilkerson*, we are bound by *Ales*. *See In re Civil Penalty*, 324 N.C. 373 (1989). We, as a panel, cannot rule contrary to that decision. Only our General Assembly, through a statutory amendment; or our Supreme Court, by decision; or our Court sitting *en banc* can reconsider our Court's holding in *Ales*.

III.    Conclusion

Based on the record before us, we conclude the trial court lacked jurisdiction to enter its order. We, therefore, vacate the order and remand for further proceedings. Of course, the trial court may act under G.S. 97-10.2(j) should evidence be offered that Employee and Defendant have entered an agreement without a condition precedent and which otherwise complies with subsection (h).

VACATED AND REMANDED.

Panel consisting of Chief Judge DILLON and Judges ZACHARY and FREEMAN.